First of three days of our docket. Looks like all of you are ready to go. I have a few brief, probably unnecessary announcements. You all look like experienced litigants, advocates. And those in the audience who are coming later, be aware of our lighting system. Red light is the important one to the court, should be an important one to you. So long as the red one's not on, you're free to run at your own speed. But you get the end of your sentence once the red light comes on. And if you need more time, we will consider giving it to you. The first case on the docket for the day, Signal International v. Burnett et al. Mr. Weinberger, I believe you looked ready a minute ago. I expect you still are. Thank you, Judge Southwick, Judge Hayes, Judge King. If the court please, my name is Alan Weinberger. I represent Signal at World Marine. We have divided the argument. At table is Mitchell Hassenkamp. I will deal with Rule 10e, indemnity, and the argument that settlement moots all of this. Mitch will take the directed verdicts and the motion to substitute. Beginning with Rule 10e, it's very simple. We were concerned that when we filed an instruction in the district court that contained an instruction with regard to indemnity, which we appealed, that you might conclude that that in some way . . . I imagine in only four minutes spending any of it on this e-mail. That's just me. All right, I'll move on. Thank you, Judge. You're going to talk about the indemnity? I am. Okay. Thank you, Judge Hayes. The brief that was filed by the appellee with regard to indemnity argued that there's a case called Baker and McKenzie. It was published by the Mississippi Supreme Court that settled this. That opinion doesn't use the word agency. The argument wasn't considered. There was no consideration of the restatement with regard to this statement. In particular, an agent . . . This is Section 808 of the Restatement, Comment B. In particular, an agent is subject to liability to the principle for all harm, whether past, present, or prospective, caused the principle by the agent's breach of the duties stated in this section. I'm just really kind of puzzled about your argument here. I think it's true that agents are liable for their breach of duty. That's why you brought a breach of fiduciary duty action. That was dealt with on a different basis, not that they lacked a cause of action, but rather that you didn't prove it, a different question that your colleague will address. The agent is liable for their breach of duty. That doesn't mean that they are liable in indemnity. Indemnity is a special little animal. Why should we take that little animal and try to make it fit here when you have other remedies like breach of fiduciary duty, fraud, whatever, that fit very fine except for the evidentiary issues? Maybe the answer to that, Judge Haynes, is the extent to which the district court charged this jury on agency law. There was an extensive charge to the jury on Mississippi agency law to set a predicate for visiting liability on signal based on the conduct of its agents. Indeed, we objected to the court's decision to use the disjunctive or in the subsequent verdict form, is signal liable because of its own personal misconduct or is it responsible for the conduct of its agents? But more importantly, we were guided by your opinion in Northrop Grumman. You said Mississippi looks at these issues through the prism of the restatement and in the great American case, Judge Haynes, the court was crystal clear, the Mississippi Supreme Court, it seemed to us, for the purposes of Erie, the Mississippi Supreme Court and great Americans stated, we adopt the restatement third approach to determining whether there is a duty to indemnify between an agent and a principal. I'm accustomed to dealing with Louisiana law and Louisiana law. The rule is set forth, raise all of the causes of action that you possess. I'd be surprised if the rule is different in Texas. Bring forward everything that the law provides to you and let things sort of sort out the way they should. But given the guidance that we received from Northrop Grumman, by the way, on the point, we ourselves acknowledge that great American was withdrawn by the court. We know that. But you relied on great American to say that Mississippi uses the restatement. Two years later in Northrop Grumman. So it seemed to us that we were entitled to this charge and that a charge that did not contain this principle was legally incorrect. Unless the court has another question. I'll turn this over to Mr. Hastenkamp. You'll have a full minute to deal with this on your own also. Good morning. I'm here to discuss two overarching errors. We allege the district court with respect to the granting of directed verdict. Of course, that's dealt with de novo. We look at the Boeing standard. And when we apply the Boeing standard, I just want to point to the district court's discussion of the directed verdicts on ROA 54697. What we see in the middle, she's discussing an accounting line. And it says that line does not show an increase around the time. There's a substantial increase around the time this lawsuit was filed, which might indicate and then went on to infer a negative inference against the non-movement, which was signal. Counsel, I think Mr. Weinberger may have identified the issues that you were going to cover. The big looming issue on this case is whether signal should be here, whether World Marine should be, whether there is any way to deal with this case now. Since you have the big length of time, I think you're the one who needs to deal with that. Tell us how we should sort out this. Is this case moot? Is it something we need to remand to the district court? How do we proceed? Sure. This is a matter that should be remanded to the district court, first of all because there's an asset purchase agreement that came out of the bankruptcy court. And it says all of the seller's claims, rights, credits, causes of action. We read that broadly, that there's a very narrow exception. What is the effect of the January, whatever it is, ruling by the district court that World Marine does succeed? Will you tell me what that ruling says? Did the district court have jurisdiction to be entering any sort of order while this case was on appeal? Was there something still pending in the district court that allowed the judge to make that decision? What do we make of that January ruling? Correct, it was done in January of this year? Yes, and that was actually in a different case, the Achari case. So that was pending before the district court. So it was not in this particular case? Correct, no, it was not. All right. What we have here are sort of the tail end, the cross claims from the first David trial. And to the extent there's any ambiguity here, to the extent there's parole evidence or special authentication needed, we could do an evidentiary hearing. We just think the most appropriate place for that would be the district court. But we don't think that's really necessary because if you look at page 61, of course this is the first time you're all seeing this when we submitted it, but the district court did not get to consider this. On page 61 there's a schedule 3.5 which identifies the claims, litigation, and disputes. And when we see the David versus Signal International case specified, and then when we see an asset transfer agreement that all of the seller's claims are being transferred, and then we see in this officer's certificate saying we represent the purchasers, we're their designee, well, we think that's pretty conclusive. And to the extent it's not, we're happy to do an evidentiary hearing. We just don't think this is the right place for that. Well, we'll see what your opposing counsel says about all this. You can move. Sure. Thank you. Can I just ask one thing on that? What is the state of incorporation of Signal? State of incorporation. Because the reason I'm asking is some states have rules about continuation of cases after a corporation dissolves, either for or against the corporation. Does the state of incorporation of Signal have such a law? Yes. I believe that the parent company, Signal International, was Delaware. Some of its subsidiaries were Mississippi, Texas, and Alabama. But the parent company that filed bankruptcy was Delaware. Okay. But you don't know what the rules are? No. Okay. And then how does 25C of the rules of sole procedure interact here? If an interest is transferred, the action may be continued by or against the original party unless the court on motion orders the transferee to be substituted. Does that have any play here? We do think that Signal could continue in the name. I mean, we don't . . . Under that rule or just in general? No, under that rule specifically. What authority? Yes. We do think that rule applies. Okay. Now, we saw that there's not a lot of discussion, not a lot of case law, on this motion to substitute and particularly contested motions to substitute. You don't see a lot of appellate courts wanting to grant those. So we say if you don't want to grant it, then let the proceeding go forward in Signal's name, remain to the district court, and then we can sort it out there. That's the most appropriate form to deal with evidence, to deal with authentication. Okay.  And so we really dispute . . . Why don't you identify again what it is in your six minutes you would like to cover, and we may be able to push you to the most important part of it. Sure. It's the application of the directive verdict, the Boeing standard. There was a seeming requirement for an exactness or certainty in the amount of damages. I just don't think that it's all that demanding to say if you're going to charge somebody for attorney's fees, turn over what the attorney sent you to pay. Turn that over as your . . . or proffer that as your evidence of what the damages are. I mean, why is that so exacting and specific and hard? Sure. And I think that a lot of the cases say that that's the type of evidence they want. The words they use, they say they want the best evidence available. Here we had immigration filing fees. We had Tracy Binion testify in her. Okay. So you did not have available the lawyer's invoices? No, we did. I already . . . Okay. Then why isn't that the best evidence available of those fees? Because the same information is contained in this accounting record. No, it's not. The accounting record is . . . I can tell you this. If I ever sent a bill to a client that said, please pay me $208,000, thank you, have a nice day, it wouldn't get paid. They would expect detail, time entries, what did you do, what day, how many hours, who did it, all of that. That's what we call fee bills with backup. Where's the backup? We believe most of that information was contained in the testimony. We had 400 workers. We had HB extensions had to be processed for all of those. We had parent processing that had to be . . . Counsel, what you're talking about is legitimate. It would show a fair amount of work that needed to be done, but is there any quantification? Is there any financial information that the jury would have gotten through just expressing how much work the lawyer had to do? I mean, how do we get any money charged and paid out of that kind of evidence? Because Tracy Binion testified that this accounting line item was set up exclusively for these fees, and not for the litigation fees, not for other worker issues, but exclusively for these . . . Didn't she say she thought that's what it did and somebody else testified much more firmly that's not what it was? No. In fact, Chris Cunningham testified that without the backup information in front of me . . . I'm not certain, but I believe this included litigation fees. Well, when Tracy Binion got on the stand, she said, no, I dealt with the litigation fees. I dealt with all of the attorneys' fees. And I know this accounting line item was set up exclusively for Patricia Bowman's immigration filing fees. So, in the event that anything else was included in that, that was a mistake. That's not what it was designed for. Well, part of the rule, it seems to be that the best evidence available must be offered. Is there anything in this record to indicate why the actual billings or other more detailed information was not presented? No. I think that was a judgment call that we could . . . that this . . . Well, no, you've already given your explanation why this is just as good. If we decide there is better evidence, which seems to be the requirement, best evidence, is there anything in this record to suggest that other evidence was unavailable? No. Did not exist. That's not in the record. All right. Let me ask you about the . . . unless . . . I'm sorry. Did you have a . . . No, go ahead. Okay. I wanted to ask you about the damages for having to get the contract laborers to replace the H-2B workers. There was also evidence that Signal charged its clients more when it had to use contract laborers. So, what evidence do we have that they had a net negative? In other words, if I have to pay now $16 an hour instead of $10 an hour and I charge Judge Southwick $16 an hour, then I don't have any . . . I'm not out anything because I've just . . . he's paying it instead of me. Whereas, if I'm still charging the $10 an hour to my client because they won't pay more, and I'm out that $6, then I have damages. How do we know from this record what was what on that? Well, there . . . I think with respect . . . if we have an alternative cause or a collateral source, that really goes to the weight of the evidence as far as was their loss suffered by Signal, whether . . . No, I don't think it is a collateral source. You're saying your expenses were increased, but if your revenue was also increased by the conduct of your opponent, then you have to net that out. So, what evidence do we have that shows that the net was a loss on these workers? We don't have the specifics of which workers' work contracts left, and the reason for that is because of these interim orders. And what they said, and this is a best evidence argument, we were not allowed to discover or present evidence relating to any post-Signal employment. So, we had to do . . . with the best information we could get, the best evidence we could get. I'm talking about what would be in your files. You lose Mr. X for whatever reason, and now you have to go hire Mr. Y, and Mr. Y costs you more. But you bill your client more. So, that would all be in your files. And where is that in the record? To present that, we would have to break it down by which workers were working on which contracts, because it's not all of the contracts. Okay, do you not know? This is in your files. You have workers that left, and now you're saying that these guys should have to pay for that. Okay? Don't you know who left and how you replaced them, or shouldn't you have to provide evidence on that? We know who left. We were not allowed to present evidence of who went to J&M. Well, I don't care where they went. You know they left, and you know whether you replaced them with contract labor, and then you know whether you charged that extra amount to your clients. Where is all that evidence? In order to present that in an exact fashion or in a competent fashion, we would have to identify the particular contract and the particular workers. And we were not allowed to identify the particular workers because they're the ones who went to J&M, and that post-signal employment evidence. But they worked for you. John Doe worked for you and left. Who replaced him, and how much did it cost you extra? You don't know that? We do, but that's something that we were not allowed to present because of the interim, because we were only allowed to present. I understand why you weren't allowed to present your own information. That doesn't make any sense. I understand you weren't allowed to inquire at J&M and all this, although you didn't appeal that. But I don't understand why you can't put on your own records of what happened in your own company. Well, I think you've done your best. Thank you for responding to our questions. We have time for rebuttal. Good morning, Your Honors. Tim Cerniglia. I represent Mr. Burnett. I'll try to answer the questions that you seem to be concerned about. First, as to Rule 25, I don't know that that applies in this situation. There is not much case law on it. And the reason I don't think it applies in this situation is because it's not a situation where there was, in fact, we know there was an assignment to somebody. That's the problem here. Is that the documents that were filed do not establish, in my opinion, that this cause of action was even considered once signals ceased to exist. And now they're trying to say, oh, wait, wait, wait, wait, it fits in one of these other categories. And I believe that you have the right to determine as a matter of law, based on what's in those documents, whether this cause of action was included in the sale of the assets or was it excluded. And I think there is no evidence that, if you follow rules of construction, that this cause of action actually survived to anyone, was actually assigned to anyone. Okay. Do we know whether Delaware law provides for survival of causes of action? Do not, Your Honor. You don't know? I did not consider that and did not look at that, or Texas, for that matter, either. Okay. So, no, I do not. I understand. I understand. It never occurred to me that there was such rule. I've never seen one in Louisiana, and I certainly don't practice Delaware law. Okay. So, no, I don't know. At any rate. All right. So let's assume that it somehow survives to somebody, that we have a case here. Why don't you address the merits? Okay. Well, let me, before you get to that, if it survives somewhere, can we decide that here, the way that there is case law that the case actually becomes moot on appeal, we would dismiss it, vacate the appeal, dismiss the appeal, and order the judgment vacated. Nobody is arguing that, and I don't think it's that kind of mootness that we're talking about. What we have is an uncertainty about who, if anyone, stands in the shoes, a signal at this stage. What's the right way to sort that out? Well, I think the right way to sort that out to start off with is whether or not it does, was it in fact transferred to someone. If it was not, and signal ceased to exist, without that But is it true, is it not, that for whatever reason the bankruptcy court actually declared that as of a certain date, signal no longer existed, no longer has a corporate existence? Except for the possibility that Delaware law may or may not allow for a cause of action to continue with no corpus, so to speak. It was though an individual had died with absolutely no heirs. Is this something we should remand to the district court, maybe as a partial remand, to have sorted out? I don't particularly think that's necessary. I think it can be determined. You understand, I'm suggesting we're not vacating the judgment. I would talk to colleagues about this. We would partial remand for the district court to figure out if in fact World Marine has succeeded to the interest. If not, what other answers, and then have that come back to us to deal as a complete package. That's certainly one way to handle it. But I believe that there is sufficient evidence before this court to make determination as a matter of law. If Delaware law does not provide that, and if the documents, and we have two issues there, if the documents, the sale of assets do not include in their definitions and in their assignments that this cause of action was even considered, you'll note that, for example, another cause of action that they had on appeal was specifically reserved to not just the debtors but to their heirs, something they want to continue to prosecute. This case wasn't mentioned that way. They're trying to get it under some generalities. If this court determines that this cause of action was not addressed, when signal ceased to exist and there's no more corpus, I think it is a matter of mootness that it would be directed to the district court to dismiss. All right, counsel, you can move on. Okay. Move on. Let me ask you about just the merits in a global sense. You know, this jury was pretty disturbed with the whole group of y'all. I agree. Your brief makes it sound like, you know, Mr. Burnett was just kind of vaguely involved in one or two things. I mean, he's, they find him part of the RICO and part of, you know, bringing people here for abuse and all this kind of, I mean, it is a very far-flung verdict against your client that you're trying to make into kind of a, he just really was basically uninvolved. That's not what the jury found. And yet the district court basically said these guys that hired Burnett, who's part of this far-flung RICO conspiracy, have no right of action against him when he was supposed to be the one advising them about all these immigration laws and avoiding all of this, you know, human trafficking and whatever. So how do you address that just in a global sense? In a global sense, I do believe that you're correct. I think the jury was, after five weeks of trial with a lot of the evidence that was introduced that I believe was inadmissible and things that had absolutely nothing to do with anything, the jury was mad. But a actual look at the record, especially this record, in this case, the five, in fact, actually six testified. Another one testified. I don't believe either of you even asked him. But these five and Signal all made it absolutely clear, Your Honor, that Mr. Burnett became involved after Signal made the selection, after Signal was in India and hired these people. That was not his job. Mr. Bingle testified. He never, he did not advertise. He did not recruit. He did not select. That was not his job. And the only thing he ever talked to Signal about was paperwork. So, yes, did the jury essentially find everybody? Yes. But also notice that in their verdict, they found zero damages against Mr. Burnett and Mr. Dewan, individually. Zero damages. And the court accordingly directed verdict in favor of Mr. Burnett, individually. I think what it shows is that the jury was mad when it came time for liability. When it came time to sort out the damages, it was cooler heads at that point in time and said, well, no, that's not a personal thing. But that's not before the court. What before the court is the evidence in this case. And the evidence in this case, Mr. Burnett did not speak to one of those five individuals before they accepted the job with Signal. One of them he didn't even meet in India. Two of them he met in 2004, nothing to do with Signal. And Mr. Burnett continuously tried to find other employment on his own nickel for these individuals. 158 of them that Signal was firing, he kept asking for names. They wouldn't give him the names. They didn't want to give him the names. He got them because the people came to him. And he found, went out of his way to find jobs to transfer them to keep them in this country legally. That's what's in the evidence in this case. Now, as far as the damages of what Signal is trying to do, I thought, and I gave them the benefit of the doubt, that perhaps they just overlooked their case in chief against Mr. Burnett. I really kind of thought that it was a tactical decision to present this before the jury. But I'm convinced, especially after hearing arguments, that it was intentional, deliberate, and calculated. They did not put in the evidence of the attorney's fees. Mr. Binion testified, yeah, I saw them all. I saw one the other day. Because simply it would not substantiate both the reasonableness of the charges or the necessity. There were not 400 and some odd people. Mr. Burnett did all the extensions for the people that had not been terminated by Signal and those that had been for other companies. It was after that, when Signal fired more people still, the next go around, that Patricia Bowman took his files. And we don't know what she did. We don't even know if, in fact, she did that part gratuitous because it was already in Mr. Burnett's files that she took over. We don't know any of that. What we do know is that your chief financial officer said, oh, no, this is for the litigation. We know that they had litigation expenses, attorneys. They had attorneys also litigating the EEOC claim against them, or the Labor Department. We know they had attorneys doing that. We know that Mrs. Bowman was given documents by Patricia Bowman for stuff dealing with ASHA. We know that she also hired Mrs. Bowman as all the immigration work. The point is, there was no establishment that they had necessity of what attorneys they claimed or the reason for the settlement. They left that intentionally. They intended just to try and use this backdoor number with no backup to say, oh, that's what our damages are. In the same way with the loss, red lights on. I'm color blind, but I see it now. I'll stop. Thank you. Thank you. Good morning. I'm Stephen Shapiro and I represent Sachin Dhawan and Dhawan Consultants. What we're left with, having heard from counsel, is what's left against Mr. Dhawan in this case? Not malpractice, not breach of fiduciary duty, but this notion of fraud and the indemnification issue. Judge Morgan was correct in entering a judgment as a matter of law, directed verdict, on the basis that there were no damages. The plaintiffs, as the court has already discussed, the plaintiffs, false plaintiffs, failed to prove any damages at all. Most of it was based on speculation. Other than the attorney's fees, which I think we've got in hand the notion that the invoices should have been put in, what evidence should they have put in about this issue of having to hire the more expensive workers and all that? What would you find sufficient to prove that? I would find that there has to be records of individuals that they had to go out and hire on a contract basis at a high rate rather than just ignore that and in a conclusory fashion just say something like, well, we had to go out and do that. You need some hard proof in this case. The proof would be they'd show time records of these contract guys and pay stubs and so forth of the contract guys they hired. Then does it matter whether or not they charge the clients more for those guys, pass the costs on or not? Does that matter here? I think it does, and I disagree with Signal. I don't think it's a collateral source. I think this is something that they were able to pass on to someone else. But we don't even have proof of the loss itself. We don't have proof of the damages. We have speculation. We have conclusions. Oh, you know what, because of this, we had to go out and hire contract workers at a higher rate than the H-2B workers. We had to do all kinds of things. And there's very little, if anything, in the record, showing that Signal did these things. Now, would it have made for a longer trial? Perhaps. But you know what, it was incumbent upon Signal to make that, to prove that in order to try. Did they turn that stuff over in discovery but just forget to put it in evidence or was it just kind of not there? Your Honor, I have never been involved in a case where there has been so much discovery. There were literally millions and millions of pages of documents. There were electronic discovery. To me, this was mind-boggling. However, having said that, I don't recall a single instance at trial where Signal put in any evidence showing in it. You're saying because there were millions of documents, you don't know if any of them were time records of contract workers or not. Whether that was out there in the ether, you don't know. You know what, Your Honor? I don't. You do know it wasn't brought up at trial. You just don't know whether it was in the millions of flash drives you got or whatever. Flash drives in native format. I mean, this is mind-boggling to me, particularly as a solo practitioner, not to mention the time and expense of having to even attempt to go through all this stuff. But if you're preparing a case for trial and you're trying to prove damages against Mr. Burnett and Mr. Dewan, then you put the proof on. And even if you don't, I don't know, I don't want to do their work for them, but if there had to be a summary exhibit with backup, that would have been another way to do it. There's a federal . . . I can't remember the name of it. You don't think estimating, saying, you know, look, we had this many . . . we thought we were going to have 30 months renewed three times or 10 months renewed three times or whatever it was, that's not good enough. Why? That's not good enough because the jury needs to be informed. The jury needs to see with their own eyes and ears, hear with their own ears, exactly what's going on and how they arrive at these conclusions. And that effort was not made. It simply came in with a lot of conclusory evidence, that one exhibit that was mentioned earlier showing the main camp. All of that was purely speculation. And it doesn't carry the day. It doesn't carry the day particularly on a fraud case where the standard of proof is somewhat higher. What's important is that the general law in Mississippi, though certainly best evidence, a party can't escape liability because of a lack of a perfect measure of damages. Certainly the argument by Signal is an awful lot of this may have been hard to track. And they did give, as Judge Haynes was saying, estimates of the number of workers, estimates of increased wage costs, estimates of whatever else went into the calculation. The fact that this is a fraud case, does that somehow trump this more general language that the absence of a perfect measure of damages isn't fatal so long as there's some measure on which a back finder could reasonably rely? Does the fact it's a fraud case make that inapplicable? Judge Hathaway, that's a very good question. And I think there should be some interplay between the two because if you're using a clear and convincing standard as the standard of proof, perhaps it heightens the type and quality of proof that you need to present to the jury. And I would say that fraud . . . With respect to my clients, the Dwan defendants, there was no evidence presented by Signal that my client committed any kind of fraud against Signal to begin with. There was evidence that the only evidence of damages came out was concerned immigration and immigration work that had to be done because of a breach of fiduciary duty or malpractice committed by Mr. Burnett. But to the extent that somehow they're saying that Mr. Dwan is responsible and his company is responsible for those damages, yeah, I would say that the standard of proof is important. And the other thing is, under Mississippi law, while it doesn't have to be perfect, there has to be a reasonable certainty. It can't just be a speculative presentation of evidence. And they had to have had this evidence. If they're a big corporation, they've got documents, they turned over zillions of documents in this case. They had to have been able to show, not even to perfection, but reasonable certainty that these damages . . . Just the reasonableness of proof of damages, is it driven by what would tend to be available? So, for example, with the attorney's fees, we know attorneys send bills and they say, on this day I worked this many hours doing this kind of stuff. And so that's why we're looking for that, versus sometimes lost profits into the future can be a little bit hard to measure and this and that and the vagaries of life. So, is that part of the analysis under Mississippi law, looking at what is out there in deciding how perfect or imperfect the proof is? Well, and that's another good question. I mean, if I'm the plaintiff in a case, I know that I have the burden of proof. And I'm going to do everything I can to convince a jury by either a preponderance or whatever the standard may be. I'm not going to leave things out. I'm not going to give something in a haphazard . . . But, I mean, we're not here to decide whether people employed a good trial strategy. I mean, the question is, was there sufficient evidence to avoid a directed verdict on the question of damages? And it seems like we have these kind of two somewhat conflicting standards in Mississippi of it doesn't have to be perfect, just good enough, but it needs to be the best available. So help me with that. Okay. I'll do my best. Judge Morgan had the discretion to decide whether the proof was sufficient. And this judge decided that the proof was not sufficient. And a lot of deference should be given to Judge Morgan on that. But I'm not . . . I know I'm not answering the question. I don't think you're getting the standard view right either, but whatever. Go ahead. Okay. I'm sorry. Refresh my memory is the question. I digressed a little bit. Well, I was just trying to ask kind of how you resolve what seems like two somewhat inconsistent views of damages, which is they don't have to be perfect. You can have an imperfect measure. However, it needs to be the best available evidence. How do we square those here, and what is your position on that? My position on that, Judge Haynes, is that while the evidence does not have to be perfect, it can't be speculative. It can't be conclusory. It's got to be based on something in reality. It's got to be based on something. There's got to be backup. I understand the attorney fee issue. Certainly. There are billing records, billing records. That's easy. But, you know, it's not that much more difficult to show, or to even hire an expert, to go in and show, hey, look, this is what we had. This is the universe of H2B employees we had. This is the universe of contract workers that we had to hire. This is the difference. This is what our projections were. I mean, that would be a satisfactory level of proof, even if it was not perfect. I hope that reconciles in your minds the difference between the two somewhat conflicting standards. Well, in defense of Mississippi, I don't know if I would agree they're conflicting, but thanks for your argument. Okay. Thank you, Your Honor. It was not an attack on the good state of Mississippi by any means. Go ahead. Oh, I'm sorry. First of all, no one has said that I'm wrong about what Mississippi indemnity law really is, point one. Point two, Judge Haynes, you will find if you look at page 45625, that's 45625 of your record, that when the jury was asked whether Mr. Burnett had engaged in fraud, they said he did, either directly or through his agents. Judge Haynes, I cannot imagine the number of jury trials you have supervised. I didn't get the charge that I wanted. I couldn't close the way I wanted to. I couldn't characterize the evidence in the record the way I wanted to with regard to indemnity. The answer to Mr. Cerniglia's charge that we have done something wrong by failing to argue the equities of what happened is that that sort of thing was interdicted by the trial court's failure to guide the jury properly with regard to listening to a presentation like that. Thank you, Judge. Yes, and just to follow up, we've talked a lot about the quantity and quality of evidence that was introduced. We have not talked about two categories that were wholly prohibited, whether or not Mississippi would allow the recovery of damages for a corporation's reputational harm. We're told that that's simply not recoverable, so don't even try. So we didn't. We believe as a matter of law that's incorrect, and that given the chance, we could have presented evidence of signaled reputational harm. Similarly, third-party litigation fees. Mississippi follows the American rule, no contract, no statute, no attorney's fees. Most states that have addressed that with respect to this third-party exception have adopted the exception. The district court said Mississippi does not adopt that exception. So we have two categories of damages which we weren't even allowed to try on. So in addition to the evidence we tried to present, there were categories which we were not allowed to even try. Moving on to the quantity and quality of what was presented, the uncertainty and speculative language that goes into the standard of what's necessary, what's legally sufficient, that really applies to where there are damages. And we have witness after witness saying, look, when I lose workers, I'm damaged. That part is not really controversial. How do we measure that when we contract with this part? No, that's not controversial, losing workers. If you can replace them, I don't know why you're damaged necessarily. I mean, I don't mean to be disrespectful to people being fungible or whatever, but if you had a welder and he left and you got another welder, I don't know why that's such a harmful thing. Sure. The CFO and CEO will both testify that it's more expensive to replace them with contract workers. That's a different question. We kind of bend down that. Sure. Whether we — I'm just not agreeing that when you lose a worker, it is inherently damaging to a company. That's fair. The testimony from Signal executives was that they were harmed when they lost workers. They were harmed when they had to rely on contract workers instead of direct hires. So they testify to the fact of damage. Whether or not we presented a perfect estimate of that or even a really good estimate of that, that's really why we're here today. With respect to the sufficiency, we did present — I mean, Mr. Burnett and Mr. Yuan had an e-mail where Mr. Burnett was saying there were 24 workers in the summer of 2007 that I'm filing paperwork that could signal. And in that position, we're told he didn't know who was at Signal, who was leaving, who was going to J&M. We have that e-mail that says, in fact, he did. He knew at least 24 of them. So we do have some good evidence as to — that there was. We have some data points from which we can derive a reasonable estimate. And the question is not, was there damage? Was there damage when this partnership misrepresented to the workers and misrepresented to Signal how this immigration deal would work when Signal was blindsided by getting these workers that had been lied to since 2003, 2004? When they were told by these workers on the day they arrived, where's my green card? I mean, the idea that they were harmed by that. We had a six-week trial. We had eight years of litigation about that harm. Now, how do we measure that? And that's really where that uncertainty is. So that's — thank you. All right, counsel. Thank you for your argument.